**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**SHERRY SHEPARD, AS NEXT AND**
**BEST FRIEND OF J.S., A MINOR**                                          **PLAINTIFF**

**VS.**                                          **CIVIL ACTION NO. 4:17-CV-00091-DMB-JMV**

**THE CLEVELAND SCHOOL DISTRICT,**
**STEVEN CRADDOCK, in his individual capacity,**
**DR. JACQUELYN THIGPEN, in her individual**
**and official capacity**                                          **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW, Defendant Cleveland School District and Dr. Jacquelyn Thigpen in her official capacity, hereinafter collectively the "District", and files this, their Brief in Support of Motion for Summary Judgment and, in support thereof, would show unto this Court as follows:

**Introduction**

This case involves a high school student's claim her 14th Amendment constitutional rights were violated. Plaintiff Jasmine Shepard alleges she was wrongfully named a co-valedictorian versus the sole valedictorian of her 2016 graduating class. Plaintiff Jasmine Shepard's theory, it appears, is the Cleveland School District forcibly made a white student, H.B., her co-valedictorian because Jasmine's race is African American.

After a year of discovery, both Ms. Shepard's equal protection and substantive due process claims must fail. For her equal protection claim, Ms. Shepard offers no proof of any discriminatory intent by any District decision maker. Further, Ms. Shepard offers no evidence of a District policy maker much less a District policy or custom that was the moving force behind any alleged

constitutional deprivation, if any exists at all. Finally, sharing the valedictorian honor does not implicate substantive due process considerations. Ms. Shepard also admits she has no economic damages. For all of these reasons, it is respectfully submitted summary judgment is proper for the District and this case must be dismissed.

On June 27, 2017, Jasmine Shepard filed suit naming the Cleveland School District, its Superintendent Dr. Jacquelyn Thigpen, and employee Steven Craddock as Defendants. Her allegation was she suffered a constitutional deprivation because Ms. Shepard shared the valedictorian honor for the class of 2016 with another student, H.B.. (Dkt. #1). H.B. is white and Jasmine is African American. Both Mr. Craddock and Dr. Thigpen have filed motions for summary judgment; those motions are pending now before this Court. (Dkt. #s 125 and 127). Mr. Craddock is sued only in his individual capacity, while Dr. Thigpen is sued in both her individual and official capacities. For all of the arguments made on behalf of the Cleveland School District, Dr. Thigpen, in her official capacity, adopts and joins in same as her official capacity suit is, in reality, only Plaintiff Shepard's attempt to sue the District. [1]

On January 16, 2018, Plaintiff filed a First Amended Complaint. [Dkt. # 37]. The Amended

---

[1] Official-capacity suits . . . 'generally represent only another way of pleading [**14] an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985) (quoting Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 690 n.55, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)). Accordingly, a § 1983 suit naming defendants only in their "official capacity" does not involve personal liability to the individual defendant. See *Hafer v. Melo*, 502 U.S. 21, 25, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (E.D. Tex. 2006).

Complaint alleges the following amounted to a deprivation of Jasmine Shepard's rights as secured by the Constitution of the United States of America:

1.  Jasmine Shepard and H.B. were selected as Co-Valedictorians after school officials failed to follow the district's policy of naming as valedictorian the Senior with the highest grade point average. (See Dkt. #37 Amended Complaint at p. 3 ¶9).

2.  Jasmine alleges H.B. has a lower grade point average. (Dkt. #37 *Id*. at p. 4 ¶13).

3.  Steven Craddock and Dr. Thigpen "allowed individuals at Cleveland High School and others to give H.B. five points for Human Anatomy and Physiology and six points for an online Physics course." *Id*.

4.  Jasmine alleges H.B. should have received only 4 points for the Human A&P and the online Physics course. *Id*.

5.  Jasmine alleges "Had Steven Craddock and Dr. Thigpen ensured that H.B. only recieved points authorized by the district, H.B. would not have been selected as a co-valedictorian and only Jasmine Shepard would have been named valedictorian." *Id*.

While not included in the Amended Complaint, it is anticipated Ms. Shepard will argue she should not have had a Desktop Publishing course counted twice on her transcript. The Human A&P and Physics courses were completed by H.B. in 2015. The Desktop Publishing course was completed by Jasmine Shepard in 2015. (See Grade Scripts of H.B. and Shepard attached as Exhibit "A").

## Law and Argument

### *Summary Judgment Standard*

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, [s]ummary judgment is appropriate "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there are no genuine issues as to any

3

material fact and the movant is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see* Fed. R. Civ. P. 56(a); *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir. 2008). "To award summary judgment '[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or . . . that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor.'" *Thompson v. Beasley*, 309 F.R.D. 236, 239 (Miss. N.D. 2015) (quoting *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 411-12 (5th Cir. 2008)). As such, "'[t]he moving party bears the burden of establishing that there are no genuine issues of material fact.'" *Thompson,* 309 F.R.D. at 239 (quoting *Norwegian Bulk Transp. A/S*, 520 F.3d at 412).

"If . . . the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Thompson*, 309 F.R.D. at 239 (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). Additionally, the movant must inform the court of the basis for its motion and then identify the facts in the record it believes demonstrate the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. 2548.

If the movant makes the necessary showing, the burden then shifts to the nonmovant to "'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial'" and that summary judgment is inappropriate. *Thompson*, 309 F.R.D. at 239 (quoting *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191-92 (5th Cir. 2011)).

4

If the parties dispute the facts, the court must "'resolve factual controversies in favor of the nonmoving party.'" *Thompson,* 309 F.R.D. at 239 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). A nonmovant may not, however, "overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles,* No. 11-41345, 490 Fed. Appx. 666, 2012 U.S. App. LEXIS 22273, 2012 WL 5285103, at *1 (5th Cir. Oct. 26, 2012) (per curiam) (citing *Hathaway v. Bazany,* 507 F.3d 312, 319 (5th Cir. 2007)).

*Section 1983*

**Section 1983**
Section 1983 of the United States Code states that
[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

*Gomiller v. Dees*, 2007 U.S. Dist. LEXIS 23230 (N.D. Miss. 2007) (quoting 42. U.S.C. §1983). Section 1983 "does not create any substantive rights, but instead was designed to provide a remedy for violations of federal statutory and constitutional rights." *Aguiar v. Whiteley*, 2016 U.S. Dist. LEXIS 15384, *11 (W.D. Tex. 2016) (citing *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied*,134 S. Ct. 1789, 188 L. Ed. 2d 771 (2014); *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *Hernandez ex rel. Hernandez v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872, 879-80 (5th Cir. 2004)). To succeed in a §1983 claim, a party must prove two elements: "(1) that plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendant acted under color of state law." *Id.* at *12 (citing *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010),

*cert. denied*, 564 U.S. 1004, 131 S. Ct. 2995, 180 L. Ed. 2d 821 (2011); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010)).

Accordingly, "'[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed.'" *Elliot v. Mgmt. & Training Corp.*, 2017 U.S. Dist. LEXIS 111975, *13 (N.D. Miss. 2017) (quoting *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989)).

**I.    Ms. Shepard Offers no Proof the Cleveland School District Violated her Fourteenth Amendment Rights.**

Ms. Shepard claims that the Cleveland School District violated her Fourteenth Amendment rights to equal protection. Specifically, Ms. Shepard asserts that the Cleveland School District violated her right to equal protection when Ms. Shepard, a black female, and H.B., a white female, were named co-valedictorians of Cleveland High School. In support of this contention, Ms. Shepard offers only her own speculation and conjecture. As such, the claim must fail.

According to the Amended Complaint, H.B. had a lower grade point average than Jasmine Shepard. Ms. Shepard offers a vague theory that the decision to have a valedictorian of each race was motivated by this Court's 2016 order to integrate Cleveland's schools. (See Dkt. #37 Amended Complaint at p. 2 ¶3). However, in her deposition, Plaintiff Shepard admitted she had no idea when or who might have originated the claimed scheme to deprive her of a constitutional right. (See Jasmine Shepard Deposition at p. 102, Line 25, p. 103 Lines 1-10 attached as Exhibit "B"). Shepard also admitted the alleged inaccuracies in the transcripts of both Shepard and H.B. could have been present long before this Court's decision in *Cowan* which Plaintiff Shepard claims was the District's motivating factor in naming two valedictorians. *Id.* at p. 112, Lines 16-20. Indeed, Dr. Thigpen

testified the quality points for classes are assigned when a final grade is entered. (See Thigpen Deposition at p. 223 Lines 3-12). As such, quality points for Human A&P, Physics and Desktop Publishing (the 3 classes in question) were all in the system at the close of 2015. (See Grade Scripts attached as Exhibit "A").

The Fourteenth Amendment provides that [no] state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. The Equal Protection Clause "requires that similarly situated persons be treated alike." *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 616 (N.D. Tex. 2017); *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1983).

Further, to properly allege a §1983 suit based on the Equal Protection Clause, a plaintiff must show "discriminatory intent or purposed based on race . . . or allegations from which the court can reasonably infer a discriminatory intent or pursed based on race[.]" *Id.*; *see Washington v. Davis*, 426 U.S. 229, 242, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976**)**; *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977). In other words, "to state a claim of racial discrimination under the Equal Protection Clause and §1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5ᵗʰ Cir. 1997).

Discriminatory intent "'implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its

adverse effect on an identifiable group.'" *Bhombal v. Irving Indep. Sch. Dist.*, 2018 U.S. Dist. LEXIS 77997, *12-*13 (N.D. Tex. 2018) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

Shepard has singled out Steven Craddock and Dr. Jacquelyn Thigpen as the decision makers in this lawsuit, but there is zero proof Dr. Thigpen, who is African-American, or Steven Craddock were motivated by intentional discrimination to announce co-valedictorians in H.B. and Jasmine. There has been no showing Dr. Thigpen or Mr. Craddock harbored any intent to disadvantage all African-American students. In fact, Ms. Shepard's own Amended Complaint shows Ms. Shepard had no real argument District policies were targeting African American students in any particular way:

"Plaintiff shows that a real and actual controversy exists regarding adherence to school board policies which affect *all students* in the Cleveland School District including Jasmine Shepard..." (See Amended Complaint at p. 5 Dkt. #27)(emphasis added).

Dr. Thigpen testified the class rank spreadsheet listed two students with the same QPA, Jasmine and H.B.. (See Thigpen Deposition at pp. 57-59, line 115 attached as Exhibit "C"). Upon seeing the list, Mr. Craddock conferred with Dr. Thigpen who observed—as school policy permitted—that there were two valedictorians. (See Thigpen Deposition at pp. 89 Line 10-13 and pp. 226 Lines 20-25). Dr. Thigpen and Mr. Craddock's reliance on neutral data from a spreadsheet cannot constitute a decision motivated by intentional discrimination.

It is anticipated that Ms. Shepard will argue there were multiple errors made in the input of grading data. However, if an error occurred, Ms. Shepard has not shown how the error was made, or who made it. Most importantly, there is no evidence any alleged error was intentionally made by

someone with discriminatory intent whose animus a District decision maker ratified. The constitution simply is not implicated by errors alone. In short, the negligent deprivation of life, liberty, or property is not a constitutional violation. See *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th Cir. 2002), cert. denied, 537 U.S. 1232, 123 S. Ct. 1355, 155 L. Ed. 2d 196 (2003); *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir.), cert. denied, 506 U.S. 973, 113 S. Ct. 462, 121 L. Ed. 2d 371 (1992).

It is also anticipated Ms. Shepard will argue, as she has alleged in her Amended Complaint, the naming of two valedictorians was somehow related to this Court's desegregation orders. But such an allegation is nothing more than conjecture. There is no evidence to support this theory. Moreover, this Court's Order was entered on May 13, 2016. The Human A&P class, online Physics class and Desktop Publishing classes - which Ms. Shepard argues were improperly graded - were all courses taken by H.B. in 2014-2015 school year (Human A&P and online Physics) and Ms. Shepard took Desktop Publishing in 2014-2015 as well. Dr. Thigpen's uncontradicted testimony is the quality points for these courses would have been assigned then in 2015, a full year before the *Cowan* decision.

Add to this Dr. Thigpen's uncontradicted testimony that she was completely unaware as to the race of H.B. when she saw the document showing the QPA tie. Dr. Thigpen cannot have acted with racially discriminatory animus when she did not know the races of the two students at the top of the QPA list. Moreover, there is also no evidence Mr. Craddock, or any other District decision maker, acted with racially discriminatory intent. For all these reasons, Ms. Shepard's lawsuit must be dismissed.

*Augustine v. Avoyelles Parish Sch. Bd.*, 2008 U.S. Dist. LEXIS 36728, *13 (W.D. La. 2008), presents facts nearly identical to the case at bar. In *Augustine*, the district court found that, absent evidence of race discrimination, there was no fourteenth amendment cause of action through section 1983 because the school board named a white female and black female co-valedictorians. *Id.* at *13-*14. Ms. Augustine, a black female, was named sole valedictorian after receiving the highest quality points. *Id.* at *7. Ms. Couvillion, a white female with the highest grade point average, was named Salutatorian. *Id.* at *8.

Ultimately, the school board made a one time decision to name Ms. Augustine and Ms. Couvillion co-valedictorians since Ms. Augustine had the highest quality points and Ms. Couvillion had the highest GPA. *Id.* at *9. The decision to name Ms. Couvillion co-valedictorian was made so Ms. Couvillion could receive the valedictorian scholarship to Tulane University. *Id.* Like Ms. Shepard, Ms. Augustine made a Fourteenth Amendment claim arguing the school board discriminated against her on the basis of race. *Id.* at *11. The district court however, reasoned that

> [w]hile it is true that Couvillion is a white female and Augustine is a black female, we have already noted that Augustine can point to no evidence that the decision was based on race. The evidence shows only that the School Board bent a long-standing rule in order to allow another accomplished student to obtain a scholarship o the college of her choice. In so doing, the School Board did not strip Augustine of her status as valedictorian and did not in any way affect her scholarship to Louisiana College, her college of choice. Augustine's complaint is not that she was denied *anything* (other than her status as sole valedictorian) but that another student got the same benefit as her. . . . [T]here is certainly not [a claim] under the Fourteenth Amendment, through 42 U.S.C. §1983, given the absence of evidence regarding race discrimination.

*Id.* at *13. Essentially, the *Augustine* court found without proof of any racial animus, a person does not have a Fourteenth Amendment claim when they are not denied anything and another person merely receives the same benefit.

10

The same is true in our case. There is absolutely no evidence the District named co-valedictorians for a discriminatory purpose. Here, the school board made no decision and every decision made by District employees was race neutral. Like Augustine, "[r]ather than pointing to specific facts, [Ms. Shepard] attempts to rely on her bare allegations that the [District's] decision to" name co-valedictorians "was for discriminatory purpose." *Id.* at *12.

Ms. Shepard was also not denied any honor. The District did not strip Ms. Shepard of her distinction as valedictorian. Instead, H.B. simply received the same benefit. The *Augustine* court found, on these same facts, there was no constitutional violation. Accordingly, just like Ms. Augustine, Ms. Shepard fails to show that the District violated her Fourteenth Amendment rights. For this reason, it is respectfully submitted, summary judgment is proper for the Cleveland School District.

## II. Shepard Also Cannot Show she Suffered a Constitutional Violation as a Result of an Official Policy, Custom, or Practice Promulgated by Municipal Policymakers.

Assuming, *arguendo*, that this Court determines there is a Fourteenth Amendment violation, Ms. Shepard's claims still fail because Ms. Shepard cannot demonstrate that the Cleveland School District was liable for the unconstitutional actions, if any exist at all.

As stated above, the first step in a § 1983 analysis is to identify the specific constitutional right involved. *Oliver v. Scott*, 276 F.3d 736, 744 n.10 (5th Cir. 2002) (citing Baker, 443 U.S. at 140). "'Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Victoria W*., 369 F.3d at 482 (quoting Baker, 443 U.S. at 146); [**23] accord *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 767, 125 S. Ct. 2796, 2810 n.15, 162 L. Ed. 2d 658 (2005); see also *Doe v. Taylor Indep. Sch. Dist*., 15 F.3d 443, 450 (5th

11

Cir.), cert. denied, 513 U.S. 815, 115 S. Ct. 70, 130 L. Ed. 2d 25 (1994). To prevail, a plaintiff must prove that she was subject to intentional discrimination. See, e.g., *Washington v. Davis*, 426 U.S. 229, 238-42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); *Coleman v. Houston Indep. Sch. Dist*., 113 F.3d 528, 533 (5th Cir. 1997); *Wallace*, 80 F.3d at 1047.

This, Ms. Shepard cannot do as there is no evidence in the record of any intentional discrimination by any District employee, much less a District decision maker. But, in any event, a governmental entity may not be held liable for the acts of its employees under a theory of *respondeat superior*. See *Monell*, 436 U.S. at 694; *Zarnow*, 614 F.3d at 167; *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 384 n.45 (5th Cir. 2005); *Pineda*, 291 F.3d at 328; *Piotrowski*, 237 F.3d at 578; *Flores v. Cameron Cnty*., 92 F.3d 258, 263 (5th Cir. 1996). "Municipalities are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." *Baker v. Putnam*, 75 F.3d 190, 200 (5th Cir. 1996).

The Cleveland School District's liability "under section 1983 requires proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Gomiller*, 2007 U.S. Dist. LEXIS, at *16. Said another way, "[t]he foundation of municipal liability under Section 1983 is that a plaintiff must have suffered a constitutional violation as a result of an official policy, custom, or practice promulgated by municipal policymakers." *Bryant v. City of Ripley*, 2015 U.S. Dist. LEXIS 19148, *14-*15 (N.D. Miss. 2015) (citing *Peterson v. City of Fort Worth Tex*., 588 F.3d 838, 847 (5th Cir. 2009)).

To impose municipal liability, one must show that "an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of [the school district.]"

*Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 167 (5th Cir. 2010). The Fifth Circuit has defined a policymaker as "'one who takes the place of the governing body in a designated area of [school district] administration.'" *Id.* (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)). The policymaker must therefore "'decide the goals for a particular [school district] function and devise the means of achieving those goals.'" *Elliot v. Mgmt. & Training Corp.*, 2017 U.S. Dist. LEXIS 111975, at *18 (N.D. Miss. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

Here, Ms. Shepard has failed to show that any official policy maker acted in an unconstitutional way and that any school District policy was the moving force behind any constitutional deprivation. Ms. Shepard claims that her constitutional rights were infringed by the District because (1) H.B. was awarded five quality points for Human A&P; (2) H.B. was allowed to take an online Physics course and was awarded six quality points for this online class; and (while not articulated in the Amended Complaint) (3) Ms. Shepard was placed in Desktop Publishing twice and her grade counted twice, which actually lowered her grade point average. Ms. Shepard alleges these three grading issues allowed H.B. to have the same QPA as Ms. Shepard and be named co-valedictorian.

Shepard's case fails under this governmental policy analysis. There has been no District policy maker identified who had "actual or constructive knowledge of the constitutional violation." Shepard also cannot identify any District policy (created by a District policy maker) which was the moving force behind any alleged constitutional deprivation. For this additional reason, the District is entitled to summary judgment.

13

**A.     The School Board is the Policy Maker.**

To impose municipal liability, one must show that "an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of [the school district.]" *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 167 (5th Cir. 2010). The Fifth Circuit has defined a policymaker as "'one who takes the place of the governing body in a designated area of [school district] administration.'" *Id*. (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). The policymaker must therefore "'decide the goals for a particular [school district] function and devise the means of achieving those goals.'" *Elliot v. Mgmt. & Training Corp.*, 2017 U.S. Dist. LEXIS 111975, at *18 (N.D. Miss. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

The positions of Superintendent and Principal are not final policy makers under Mississippi Law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484, 106 S. Ct. 1292, 1300-1301 (1986); *St. Louis v. Proprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 923-24 (1988). Moreover, they were not delegated such authority. *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986) 798 F.2d at 759 (holding that school district could only be bound by principal or superintendent if he was delegated policymaking authority).

In *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211 (5th Cir. 1998), summary judgment was properly granted for the school district on a §1983 claim because principals were not delegated the authority to formulate official policy and the plaintiffs failed to show that the lack of such a policy was the result of an intentional choice on the part of the board of trustees. In *Doe*, applying Texas Law, final policymaking authority rests with the district's board of trustees. There, *Tex. Educ. Code Ann*. § 23.01 provided that the public schools of an independent school district shall

14

be under the control and management of a board of seven trustees. The *Texas Education Code* further provided that the trustees shall have the exclusive power to manage and govern the public schools of the district, *Tex. Educ. Code Ann.* § 23.36(b), and that the trustees may adopt such rules, regulations, and by-laws as they may deem proper. *Tex. Educ. Code Ann.* § 23.26(d). The *Texas Education Code* gives the board of trustees not only legislative power over the district they serve--the power to make rules, regulations, and by-laws--but also a form of executive power, the power to control and the exclusive power to manage as well as govern the district.

In Mississippi, a school board has the power to select all school district personnel. *Miss. Code Ann.* § 37-7-301(p) (2000). The *Mississippi Code* prohibits the arbitrary dismissal of school teachers covered by the Public Education Title of the Mississippi Code, *Mississippi Code* section 37-1-1, et seq, with the school board as the ultimate decision maker.

Without a showing that the school board--the final decisionmaker--had actual knowledge of the alleged improper basis of its subordinates' recommendation, the board cannot be liable for the alleged retaliation against a school employee. *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 599 (5th Cir. 2001). Consistent with prevailing authority in the 5th Circuit, *Beattie*, supra, held this oversight maintained by the school board was determinative of final policy making authority without delegation. *Id.*, 254 F.3d at 601 (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.), cert. denied 528 U.S. 1022, 145 L. Ed. 2d 413, 120 S. Ct. 533 (1999)(finding that a board's decision to affirm a superintendent's recommendation to transfer a teacher was an act of official policy, noting that "on at least two occasions, we have held that the board of trustees of an independent school district . . . is a policymaker for purposes of § 1983").

Similarly, in *Lawson v. Hinds Cty. Sch. Dist.*, No. 3:12cv698-DPJ-FKB, 2014 U.S. Dist. LEXIS 13000, at *7 (S.D. Miss. Feb. 3, 2014) it was noted without contest that the school board was the final policymaker and recognized that "absent action by the policymaker that caused the alleged constitutional violation, or some official policy pursuant to which the violation occurred, the District cannot be held liable under § 1983." *James v. Marion Cty. Sch. Sys.*, No. 2:10cv219-KS-MTP, 2010 U.S. Dist. LEXIS 133426, at *5 (S.D. Miss. Dec. 16, 2010)(James must show that the complained of conduct was a result of the actions or inactions of the school board or its policies. Nowhere in the pleadings does the Plaintiff relate the complained of injury to the school board, nor does she cite any custom or policy that the school board violates.).

In sum, the Board of Trustees of the Cleveland School District is the only policy maker which can be implicated in this case.

**B.    No Affirmative Participation by the Policy Maker.**

In this case, there is no allegation in the Amended Complaint that the District's school board took any action or had any policy in play which caused the alleged constitutional deprivation. In fact, the school board and its members are not mentioned at all in the lawsuit as having taken any action or adopting a policy which caused Ms. Shepard any harm. For this reason, dismissal is proper.

**C.    No Policy Has Been Identified Which was the Moving Force Behind any Constitutional Violation.**

Even if this Court would accept someone other than the school board as a policy maker for the District, Ms. Shepard presents no evidence of any other "policy" much less a policy which was the moving force behind her alleged constitutional deprivation.

There are two ways a plaintiff may identify an official policy. First, the plaintiff may identify

16

"a policy statement formally announced by an official policymaker[.]" *Britton v. Southaven Police Dep't.*, 2016 U.S. Dist. LEXIS 183266, *21 (N.D. Miss. 2016). Alternatively, a plaintiff may point to "a persistent and widespread practice of [school district] officials or employees, which, although not authorized by the officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents a [school district] policy." *Zarnow*, 614 F.3d at 166.

In addition, the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 411; *James*, 577 F.3d at 617. Thus, plaintiffs seeking to recover against a governmental entity under § 1983 "must first prove a direct causal link between the [governmental] policy and the constitutional deprivation; they then must establish that the [governmental entity] consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens." *Snyder*, 142 F.3d at 795-96 (citing *City of Canton*, 489 U.S. at 389); see *Johnson*, 379 F.3d at 309-10. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 410; see *Estate of Davis*, 406 F.3d at 381. *Akins v. Liberty County*, 2014 U.S. Dist. LEXIS 2845, *40-41, 2014 WL 105839.

Nevertheless, "'[t]his connection must be more than a mere "but for" coupling between cause and effect.'" *Johnson*, 379 F.3d at 310 (quoting *Fraire*, 957 F.2d at 1281 (citing *City of Canton*, 489 U.S. at 386; *City of Okla. City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)). The plaintiff must also establish that a government policy or custom was the proximate cause of the injuries sustained. See *Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980), cert. denied, 450 U.S. 931, 101 S. Ct. 1392, 67 L. Ed. 2d 365 (1981) (holding that "[i]n order for a governmental

17

unit to be liable under § 1983, the policy or custom must . . ., by the very terms of the statute, be a proximate cause of the constitutional violation"); accord *Johnson*, 379 F.3d at 311. Thus, "[p]ointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*. Rather, the policy must be the proximate cause of the section 1983 injury." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996), cert. denied, 519 U.S. 1111, 117 S. Ct. 950, 136 L. Ed. 2d 837 (1997); see *Murray v. Earle*, 405 F.3d 278, 290 (5th Cir.), cert. denied, 546 U.S. 1033, 126 S. Ct. 749, 163 L. Ed. 2d 573 (2005).

**Human A&P**

Ms. Shepard alleges the points afforded H.B. for Human A&P were incorrect according to the District's curriculum guide. (See Amended Complaint at ¶13). Ms. Shepard alleges that if Mr. Craddock and Dr. Thigpen "ensured that H.B. only received points authorized by the district, H.B. would not have been selected as co-valedictorian..." *Id*.

The points attributed for Human A&P were placed in the system by Cynthia Kemp, who is an employee of the District and works in the District's Central Office. (See District's Response to Plaintiff's Interrogatory No. 6 attached as Exhibit "D"). Kemp is not a policy maker under the law. Kemp does not "decide the goals for a particular [school district] function and devise the means of achieving those goals." *Elliot v. Mgmt. & Training Corp*., 2017 U.S. Dist. LEXIS 111975, at *18 (N.D. Miss. 2017) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

The Human A&P quality point issue is not a District policy which was the proximate cause of the alleged constitutional violation, to the extent it is a policy at all. While it was the District's custom and practice to regularly give Human A&P more weight than a regular class (either 5 or 6 points for an "A" depending on the year), students of all races were treated equally in the same

18

grading cycle. (See Exhibit "D" District's Responses to Plaintiff's Interrogatory No. 16). In other words, there is no proof that white students were getting more quality points for Human A&P than students of other races. In fact, the points attributed to H.B. for Human A&P were actually less than the points typically attributed to this class.

H.B. received 5 points for her "A" in Human A&P in 2015 when she was a junior. District students traditionally received 6 points for an "A" in this class. As such, there is no proof allowing H.B. to receive 5 points for Human A&P in 2015 was an action taken with the goal in mind of depriving Ms. Shepard the sole valedictorian honor in 2016. In fact, Ms. Shepard does not even allege H.B. received the 5 quality points for Human A&P with the goal in mind of keeping Jasmine from achieving sole valedictorian status. (See Complaint generally).

Ms. Shepard actually was registered for Human A&P in 2015, the same year H.B. took the class, and her mother requested she be removed from the class because her schedule was too rigorous. (See Exhibit "E" letter from Dr. Sherry Shepard to Alyson Jones dated August 28, 2014). While the District's curriculum guide does not list Human A&P as an advanced or accelerated class, Jasmine Shepard cannot show the practice of giving the Human A&P class higher quality points was affirmatively linked to any alleged constitutional violation. In fact, H.B. would have received the quality points for Human A&P her junior year, a full year prior to the valedictorian announcement at issue.

Further, there is no proof the District's allotment of quality points for Human A&P was a practice taken with deliberate indifference to a risk of a constitutional deprivation. At worse, the District made an error in not including Human A&P in the curriculum guide as an accelerated or advanced class, but there is no evidence such an act was done (or not done) with a looming risk of

a resulting constitutional injury.

**On Line Physics**

As for the on-line Physics class, H.B. and another student approached counselor Alyson Jones about taking an online Physics class and Ms. Jones facilitated these students taking the class. (See H.B. Depo at pp. 26-27 attached as Ex. "F").

Alyson Jones is a school counselor and, like Ms. Kemp, is not a District policy maker. Jones does not set the goals for the District and determine how the District will meet those goals. Moreover, allowing these two students to taken an on-line course is not a District policy. This was a one-time determination by a school counselor and cannot be said to be a policy decision of the District. Finally, there was no proof that any District employee, Jones or otherwise, allowed this online course to be taken by H.B. with the goal in mind of depriving Ms. Shepard of any constitutional rights or that there was any known risk of a constitutional deprivation which would result to Jasmine. Moreover, there was evidence that multiple students of all races take online courses. (See On Line Course List attached as Exhibit "G").

**Desk Top Publishing**

While not listed in the Amended Complaint, it is anticipated Shepard may argue the District discriminated against her by allowing her to get credit two times for a Desk Top Publishing class taken during her junior year. Alyson Jones, and no other District employee, was involved in the decision to allow Ms. Shepard to remain in the Desk Top publishing class for the two semesters. Ms. Shepard admits she has no evidence Mr. Craddock knew about the Desktop Publishing class being listed on her transcript twice. (See Deposition of Jasmine Shepard attached as Exhibit "B" at p115, line 6-8). Moreover, Jasmine knew the grade was listed twice, for a full year, and took no action to

20

alter the grade. *Id.* at p 113, line 12-25 and 114 line 1-24.

Alyson Jones cannot be labeled as an "official policy maker;" Ms. Jones does not take the place of the District's governing body nor does she "decide the goals for Cleveland High School and devise means of achieving their goals." Moreover, this decision cannot be district policy because it was an isolated incident. There is also no evidence Ms. Jones allowed Ms. Shepard to stay in Desk Top publishing a second semester with the goal in mind of violating Ms. Shepard's constitutional rights.

In sum, for all of the alleged failures of the District, no action can be attributed to any District "policy maker" who intentionally discriminated against Ms. Shepard and there is certainly no policy which was created with the intent of depriving Ms. Shepard of any constitutional rights. For all of these reasons, summary judgment is warranted for the District.

## III. The District Has Not Deprived Shepard of any Property Interest.

Shepard also claims the District violated her substantive due process rights when Dr. Thigpen and Mr. Craddock "gave H.B. more points for courses than allowed by the school district's policies and procedures." Dkt. #37 at ¶ 16. In a section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action resulting in a deprivation of that interest. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991); *see also Board of Regents v. Roth*, 408 U.S. 564 (1972). Jasmine Shepard has no property interest in being the valedictorian much less the sole valedictorian. As such, her substantive due process claims against the District must be dismissed as well.

21

To have a federally protected life, liberty, or property interest in, a plaintiff must "have a legitimate claim of entitlement to it;" relevant entitlements are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citation and quotation marks omitted). If the benefit may be granted or denied at the discretion of government officials, it is not an entitlement. *Id.* Courts look for "'explicitly mandatory language,' *i.e.* specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow." *Ridgely v. FEMA*, 512 F.3d 727, 735-36 (5th Cir. 2008) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)).

Shepard identifies no property interest to which she was constitutionally entitled. The school handbook explicitly permits more than one valedictorian. (See 2016 Handbook attached as Exhibit "H"). Ms. Shepard was never guaranteed she alone would obtain the honor of sole valedictorian, yet she claims a constitutional right to this distinction.

Further, Ms. Shepard has no constitutional right to the distinction of valedictorian, period. Students have a property interest in a state-provided public education. *Goss v. Lopez*, 419 U.S. 565, 574 (1975). However, both the Supreme Court and courts in the Fifth Circuit have carefully limited that property interest to the educational process itself; extracurricular activities, the right to walk at graduation, and even the right to give a valedictory speech at graduation are not constitutionally protected property interests. *See Niles v. Univ. Interscholastic League*, 715 F.2d 1027, 1031 (5th Cir. 1983); *Khan v. Fort Bend Indep. Sch. Dist.*, 561 F.Supp.2d 760, 764-65 (S.D. Tex. 2008); *see also See Jeffrey v. Bd. of Trs. of the Bells ISD*, 261 F.Supp.2d 719, 725 n.7 (E.D. Tex. 2003)

22

("[plaintiff] does not have a property interest in becoming class valedictorian.") Under *Goss* and its progeny, there is no authority to create a property right in a sole valedictorian honor at the local level.

However, even if Ms. Shepard has a property or liberty interest in being sole valedictorian, there remains no evidence any District employee deprived Ms. Shepard of that right. Dr. Thigpen and Mr. Craddock evaluated data showing two students held the same top overall QPA and then named a valedictorian tie. These District employees awarded the co-valedictorian honor based on neutral data. For all of these reasons, Ms. Shepard's substantive due process claim must fail.

**IV.** **Ms. Shepard has Suffered no Economic Damages.**

Finally, Ms. Shepard has no economic damages arising out of her being named co-valedictorian. It is uncontroverted that Ms. Shepard has suffered no economic loss from being named a co-valedictorian versus the sole valedictorian. In her Responses to the District's Requests for Admissions, Ms. Shepard admits she has lost no scholarship due to the co-Valedictorian honor. (See Responses to Requests for Admission attached as Exhibit "I"). In fact, Shepard was the recipient of the following scholarships: Luckyday Scholarship, Bledsoe Scholarship, the Academic Excellence Scholarship, Girls State Scholarship, the Moore/Chan Memorial Scholarship, the AKA Scholarship, the Cleveland/Bolivar County Chamber of Commerce Scholarship, and the Baxter Scholarship.

While Ms. Shepard did list legal fees and costs, a hotel stay and a security system as damages, there is no evidence (1) Jasmine Shepard incurred these costs and (2) that the security system and hotel room have any relevance to this case. For this additional reason, Ms. Shepard's claims must fail.

23

**Conclusion**

Jasmine Shepard is an intelligent, high-achieving college student receiving multiple scholarships at the University of Mississippi. What Ms. Shepard is not is a victim of a constitutional deprivation at the hands of any District official. There is simply no evidence any District decision maker intentionally discriminated against Jasmine in the naming of the 2016 valedictorians. There is no evidence any District policy was the moving force behind this alleged constitutional deprivation, if any existed at all. There is also no evidence Ms. Shepard had a property right in being the sole valedictorian or suffered any economic damages.

For all of these reasons, it is respectfully requested the District and Dr. Thigpen in her official capacity be dismissed from this lawsuit.

THIS, the 24th day of September, 2018.

Respectfully submitted,

JACKS | GRIFFITH | LUCIANO, P.A.
Attorneys for Defendant Cleveland School District

By:___*/s/ Jamie F. Jacks*_____
       Jamie F. Jacks, MS Bar No. 101881
       Daniel J. Griffith, MS Bar No. 8366
       Arnold U. Luciano, MS Bar No. 99198

OF COUNSEL:
JACKS | GRIFFITH | LUCIANO, P.A.
150 North Sharpe Avenue
P. O. Box 1209
Cleveland, Mississippi 38732
Telephone: (662) 843-6171
Facsimile: (662) 843-6176
jjacks@jlpalaw.com
dgriffith@jlpalaw.com
aluciano@jlpalaw.com

24

## CERTIFICATE OF SERVICE

I, Jamie F. Jacks, attorney for Defendant Cleveland School District herein, hereby certify that I have this day filed electronically the above and foregoing *MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT* with the Clerk of this Court using the ECF filing system which will send notification of filing to all registered counsel of record.

DATED this the 24th day of September, 2018.


        */s/ **Jamie F. Jacks***
        Jamie F. Jacks