# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

JASMINE SHEPARD                                                                          PLAINTIFF

V.                                                                          NO. 4:17-CV-91-DMB-JMV

THE CLEVELAND SCHOOL DISTRICT;
STEVEN CRADDOCK, in his individual
capacity; and DR. JACQUELINE
THIGPEN, in her individual and official
capacity                                                                          DEFENDANTS

## OPINION AND ORDER

Cleveland High School named two co-valedictorians of its 2016 graduating class—Jasmine Shepard, who is African American, and H.B., who is white. Shepard, believing she would have been named sole valedictorian but for racial animus, filed this action against the Cleveland School District, Jacqueline Thigpen, and Steven Craddock, alleging under 42 U.S.C. § 1983 equal protection and due process violations. The School District and Thigpen, in her official capacity, have moved for summary judgment; and Thigpen and Craddock, each in an individual capacity, have moved for summary judgment. Because Shepard has failed to establish a basis for liability under § 1983 with respect to the defendants, the motions for summary judgment will be granted.

## I
## Summary Judgment Standard

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II
## Factual Background

### A. The Parties

Before their consolidation in 2017, Cleveland High School and East Side High School, both located in Cleveland, Mississippi, operated separately in the Cleveland School District. Doc. #186-2 at 72. Cleveland High has been referred to as the "white high school." *Id.* at 12. East Side High historically was "majority black." Doc. #180-1 at 8. In 2017, both high schools closed and were consolidated into a single high school—Cleveland Central High School. Doc. #186-2 at 72. Cleveland Central is now the only public high school in Cleveland. *Id.* at 72–73.

Prior to consolidation, Steven Craddock[1] was Cleveland High's principal and is now assistant principal at Cleveland Central. Doc. #186-2 at 72. Jacqueline Thigpen[2] has been the superintendent of the School District since 2008. Doc. #180 at 22–23.

With respect to its 2016 graduating class, the School District named two co-valedictorians. Doc. #190-6 at 2. One was Jasmine Shepard, who is African American. *Id.*; Doc. #177-1 at 57, 66. The other was H.B., who is white. Doc. #190-6 at 2; Doc. #177-1 at 71–72.

### B. Relevant School District Procedures

#### *1. Rank Points and Class Rank*

The School District's Student Handbook set forth the procedure for valedictorian determination:

> The Grade Point Average (GPA) used to determine final senior ranking for each student shall be calculated by dividing the total rank points accumulated by the total semester credits accumulated.
> If A TIE EXISTS using the procedure above, then the student with the higher

---

[1] Craddock is white. Doc. #150 at 20.

[2] Thigpen is African American. Doc. #130-2 at 99.

> numerical average computed by dividing the total numerical average for all
> semester credits earned by the total number of semester credits earned will be
> accorded the higher ranking.
> If A TIE STILL EXISTS, then the student with the higher number of grade points
> will be accorded the higher ranking.
> If A TIE STILL EXISTS, then there shall be a tie in the final ranking.

Doc. #183-8 at 14.[3]

For the purpose of class rank, during the time period relevant to this case, classes at Cleveland High were designated "regular," "accelerated," or "advanced." *Id.* An "A" earned in a regular class was worth four rank points; an "A" earned in an accelerated class was worth five rank points; and an "A" earned in an advanced class was worth six rank points.[4] *Id.* The Curriculum Guide, which provided the designations for classes,[5] defined regular classes as classes that were not accelerated or advanced. Doc. #183-7 at 9.

### 2. Online Course Policy

Thigpen and Lisa Bramuchi, the School District's Assistant Superintendent for Curriculum Assessment and Instruction,[6] incorrectly believed that during the 2014–2015 school year, the School District was authorized to offer online courses for credit that would count toward students' graduation requirements.[7] Doc. #180-1 at 77; Doc. #185-2 at 41, 42. Although the School District permitted at least two students, one of whom was H.B., to enroll in an online course for credit,[8] it

---

[3] The GPA for the purpose of determining class rank has been referred to by the parties as "grade point average," "QPA," and "cumulative weighted QPA." Doc. #37 at 4; Doc. #131 at 8, 9; Doc. #127-2 at 95–96. The figure used to determine class rank is identified by the Class Rank Report as "Cumulative Weighted QPA." Doc. #213-1. The Court will refer to this figure as "GPA" in accordance with the Student Handbook. *See* Doc. #183-8 at 41.

[4] These points have been referred to by the parties as "quality points" and "weights." Doc. #130-4 at 4; Doc. #181-1 at 183. The Court will refer to these points as "rank points" in accordance with the Student Handbook and the Curriculum Guide. *See* Doc. #183-7 at 9; Doc. #183-8 at 41.

[5] Doc. #185-2 at 28.

[6] *Id.* at 25–26.

[7] The School District was *not* authorized to offer online courses for credit at that time. Doc. #188-1 at 2.

[8] The two students—H.B. and J.W., both of whom are white—took online Physics for credit toward graduation in the

did not broadcast or announce this option was available. Doc. #184-1 at 65. The Curriculum Guide in effect at the time the two students enrolled in an online course for credit did not contain information regarding online courses. *See id.*; Doc. #183-7.

### C. Transcript Errors and Access to Online Courses

*1. H.B.'s Rank Points*

H.B. took Human Anatomy & Physiology ("Human A&P") and online Physics during the 2014–2015 school year, earning an "A" in both courses. Doc. #213-4 at 1; Doc. #130-1 at PageID 697. Her Human A&P course was designated as accelerated, which resulted in five rank points. Doc. #130-1 at PageID 697. Her online Physics course was designated as advanced, which resulted in six rank points.[9] *Id.*

In the applicable Curriculum Guide, Physics I was designated as an accelerated class; Physics II was listed as an advanced class; and Physics and Human A&P did not appear under either category. Doc. #183-7 at 9. For the 2014–2015 school year, Human A&P was designated at Cleveland High as advanced in some records and accelerated in others.[10] None of the entries for Human A&P at Cleveland High reflected the designation in the Curriculum Guide for 2014–2015, which was regular. *See id.*

At the time of her deposition, Thigpen believed Human A&P was an advanced course but was unable to locate it in the Curriculum Guide's list of accelerated and advanced courses. Doc.

---

2014–2015 school year. Doc. #188-3 at 31, 36. Although the record contains a list of high school students in the School District who took online courses between 2011 and 2017, the list does not indicate whether the courses were counted towards the students' graduation requirements. *See* Doc. #189-3.

[9] The Curriculum Guide for the 2014–2015 school year provided the number of rank points that should have been assigned to those courses. *See* Doc. #185-2 at 60.

[10] Doc. #213-6 at 13–14, 16–27, 30, 32, 34–36, 38 (advanced); *id.* at 15, 28, 31, 33, 37 (accelerated). For the 2014–2015 school year, Human A&P was designated as advanced at East Side High. Doc. #213-5 at 24; Doc. #213-6 at 1–11.

#181-1 at 155; Doc. #180-1 at 108.  Bramuchi testified that it was not a regular course and that the Curriculum Guide was incorrect in listing it as a regular course.  Doc. #185-2 at 76–77, 78.

Cynthia Kemp was the School District's MSIS[11] Coordinator from 2010 until the summer of 2018.  Doc. #190-3 at 18, 19.  Her job was to "make sure [the system] calculates the weights it's supposed to calculate."  Doc. #185-2 at 60; *see* Doc. #130-4 at 4.  Kemp understood this to entail ensuring that the points for each course were accurate according to the Curriculum Guide.  Doc. #190-3 at 95.  However, she did not consult the Curriculum Guide to determine whether she was assigning the correct weights to courses during the relevant time period.  *Id.* at 112.

On three different grade reports run by Kemp on April 22, 2015, she designated Human A&P as advanced, then regular, then accelerated.  Doc. #190-4 at 116–17.  She could not explain why the same class was designated as three different course types.  *Id.* at 117.  According to Kemp, the weights of courses "roll over" automatically from previous school years, but that they were "rolling over wrong."  *Id.* at 118; Doc. #190-3 at 52, 61.

In designating H.B.'s Physics course as advanced, Kemp consulted the Mississippi Department of Education's course codes instead of the Curriculum Guide.  Doc. #190-3 at 104–05.  Thigpen testified that Physics was an accelerated course because Physics I was listed as accelerated in the Curriculum Guide and that H.B. should have received 5 rank points for her "A."  Doc. #181-1 at 154.  Bramuchi testified that Physics was an advanced course but that the Curriculum Guide erroneously designated it as an accelerated course.  Doc. #185-2 at 65–67.

### 2.  Online Physics and Desktop Publishing Courses

H.B. was unaware she could take online classes until she consulted Alyson Jones, a white guidance counselor at Cleveland High.  Doc. #187-4 at 13–14, 153; Doc. #188-3 at 26–29.  H.B.

---

[11] Mississippi Student Information System.  Doc. #189-8 at 1.

told Jones that she was enrolled in a biology course she did not want to take, and asked whether there were other options to earn quality points. Doc. #188-3 at 27. Jones informed H.B. that she could take online Physics during her study hall period. *Id.* at 31. J.W., another white Cleveland High student, was also given permission to take the online course. *Id.* at 36.

Shepard did not know she could take an online course. Doc. #130-2 at 99. Shepard attempted to consult Jones about her schedule but could "never find her because she would never be in her office." *Id.* at 35. Shepard relied on the Curriculum Guide, which did not contain information about online courses. *Id.*; Doc. #184-1 at 65.

When Shepard was enrolled in Human A&P, she informed Jones she wanted to be placed in a different course because it was listed only as a "four-point course," which would have actually lowered her GPA even if she received an "A," and that she wanted to take courses that awarded more rank points. *See* Doc. #130-2 at 38. When Jones "didn't do anything for a few days," Shepard informed her mother, who wrote Jones a letter with a request to remove the class from Shepard's schedule and enroll her in "an elective, study hall, or office monitor" for that period. *Id.*; Doc. #125-2 at 1. Shepard's mother explained in the letter that "[Jasmine] has too much on her plate" and that "I want Jasmine to be challenged with rigorous courses, but I do feel that she is burdened by the current schedule." Doc. #125 at 1–2. Jones removed Human A&P from Shepard's schedule and placed her in Desktop Publishing, which Jones knew Shepard had already taken and passed. Doc. #130-2 at 38; *see* Doc. #187-4 at 62. It was contrary to the School District's practices for a student to receive credit for a course she had already completed and earned an "A." Doc. #185-2 at 48–49. When Shepard voiced her concern to Jones about re-taking a class she had already passed, Jones responded, "Well, there's nothing else I can do for you. Just sit in the class." Doc. #130-2 at 38. Shepard was told that she would not receive an additional grade.

*Id.* at 77.

Jones testified that she re-enrolled Shepard in Desktop Publishing because it was the only class available in that period and did not inform Shepard that online Physics was an option because Shepard's mother had indicated that Shepard was overloaded. Doc. #187-4 at 62. Jones knew Shepard's race at the time. *Id.* at 53. At the end of her junior year, Shepard discovered that she had in fact been given a grade for re-taking Desktop Publishing but did not inform the teacher or Craddock. Doc. #130-2 at 78.

### D. Naming of Co-Valedictorians

Sometime in May 2016, SAMS[12] calculated the averages that were used to determine Shepard's and H.B.'s class ranking. Doc. #127-2 at 111. One of Cleveland High's guidance counselors notified Craddock that SAMS had produced a class rank report in which two students' cumulative weighted QPAs were tied.[13] *Id.* at 95–96. Craddock took the report to Thigpen, and they reviewed it together. *Id.* Thigpen "looked at the class rank report, saw two students on there with the same GPA, same QPA, verified that they were the same, and … said, [i]t appears as if we've got two valedictorians." Doc. #180-1 at 89. The two valedictorians were Shepard and H.B.

Neither Craddock nor Thigpen attempted to determine whether the correct number of rank points had been assigned to the courses in H.B.'s transcripts or Shepard's transcripts. Doc. #184-2 at 12; Doc. #127-2 at 101. Craddock did not have access to students' grade scripts at that time. Doc. #127-2 at 98. While it was Thigpen's responsibility to ensure that the information in SAMS and MSIS was correct, she did not verify the information in Shepard's and H.B.'s grade scripts

---

[12] The term "SAMS" is used by the parties in their briefs. Shepard's brief in response to Craddock's summary judgment motion states that it stands for "Student Administration Manager Spectra." Doc. #150 at 11. Deposition testimony of Thigpen indicates that SAMS is the School District's "individual student packet." Doc. #180-1 at 96.

[13] The copy of the class rank report in the record was generated by the School District on May 31, 2018, which shows only the tie between Shepard and H.B. Doc. #213-1. The original class rank report is not in the record.

because she "trusted people to have done their job." Doc. #180-1 at 91. It was not customary in the School District to manually re-calculate students' GPAs to verify class rankings. Doc. #187-4 at 112.

Following the commencement ceremony at which Shepard and H.B. were announced as co-valedictorians,[14] Shepard's mother wrote a letter to the School District and Thigpen challenging "the Co-Valedictorian Classification and Senior Ranking." Doc. #178-4. Thigpen responded to the letter on June 7, 2016, requesting that Shepard's mother "provide specific information" regarding what policies were violated, how they were violated, and by whom. Doc. #179-1. Thigpen stated that "[a]fter this information is received, the district will respond to each allegation." *Id.* The record does not reflect any response to Thigpen's letter by Shepard's mother.

## III
## Relevant Procedural History

On June 27, 2017, Sherry Shepard, on behalf of Jasmine Shepard, then a minor, filed a complaint in the United States District Court for the Northern District of Mississippi against the School District, Craddock, and Thigpen. Doc. #1. On January 12, 2018, Sherry filed a motion to amend the complaint, attaching a proposed amended complaint that listed Jasmine Shepard as the plaintiff. Doc. #35; Doc. #35-1. On January 17, 2018, United States Magistrate Judge Jane M. Virden granted by text order the motion for leave to file an amended complaint.

On January 18, 2018, Jasmine Shepard filed an amended complaint against the School District; Craddock, in his individual and official capacities;[15]and Thigpen, in her individual and official capacities, "seek[ing] monetary damages as a result of Cleveland High School failing to

---

[14] Doc. #190-6 at 2.

[15] The caption of the amended complaint shows Craddock is sued in his individual capacity. Doc. #37 at 1. However, the body of the complaint states Craddock is sued in both his individual and official capacities. *See id.* at 2.

follow the established policies and procedures for selecting a valedictorian ….” Doc. #37 at 1–2. Shepard asserts claims under 42 U.S.C. § 1983, alleging her rights under the Fourteenth Amendment's Equal Protection Clause and Due Process Clause were violated. *Id.* at 1, 5.

On September 10, 2018, Thigpen, in her individual capacity, filed a motion and supporting memorandum seeking summary judgment as to all claims filed against her. Docs. #125, #126. The same day, Craddock, in his individual capacity, filed a motion and supporting memorandum seeking summary judgment as to all claims filed against him. Docs. #127, #128. On September 24, 2018, the School District and Thigpen, in her official capacity, jointly filed a motion and supporting memorandum seeking summary judgment as to all claims against them. Docs. #130, #131. These motions have been fully briefed.[16] *See* Docs. #126, #128, #131, #150, #154, #156, #161, #175, #200.

## IV
## Discussion

Section 1983 of the Civil Rights Act of 1871 provides a cause of action against state and municipal government officials and entities for violations of constitutional rights.[17] *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 688–90 (1978). Here, Shepard alleges that, due to her race, the School District,[18] and Thigpen and Craddock in their individual and official capacities, denied her "right to receive the same educational opportunities afforded whites" guaranteed by the

---

[16] On October 29, 2018, the School District moved to strike from Shepard's response three newspaper articles attached as exhibits, and to strike from Shepard's memorandum references to *Cowan v. Board of Supervisors*, references to Thigpen as a "turncoat," and certain quotes. Doc. #159 at 1–2. After considering the briefing on the motion to strike, the Court granted the motion as to the newspaper articles, and as to the *Cowan* references to the extent the *Cowan* references were used to show the existence of a school board policy, but denied all other relief. Doc. #214. The Court has not considered the stricken articles or references in evaluating the summary judgment issues.

[17] Section 1983 is the exclusive remedy for alleged violations of the Fourteenth Amendment by state and municipal government officials. *See Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994).

[18] A school district, or a school board as policymaker for a school district, may be proper defendants to a § 1983 claim "if the challenged action implements or executes a policy officially adopted by that body's officers." *Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 600 n.2 (5th Cir. 2001).

Fourteenth Amendment's Equal Protection Clause. Doc. #37 at 1, 5; Doc. #154 at 21. Specifically, Shepard alleges in her amended complaint that due to their respective races (1) H.B. was given more rank points than permitted by the Curriculum Guide for online Physics and Human A&P; (2) H.B. was given the opportunity to take online Physics while she was not; and (3) she was stripped of the distinction of being the sole valedictorian. Doc. #37 at 4–5. Shepard further claims her right to due process was violated when "[the defendants] gave H.B. more points for courses than allowed by the School District's policies and procedures."[19] *Id.* at 5. Additionally, Shepard argues in her responsive briefs that her Desktop Publishing course was erroneously counted twice on her transcript, which lowered her GPA.[20] Doc. #150 at 8, 10; Doc. #154 at 8, 10; Doc. #175 at 6, 10. The defendants collectively have moved for summary judgment on all claims.

### A. Individual Capacity Claims

Both Craddock and Thigpen, making the same general arguments, seek summary judgment on the individual capacity claims asserted against them by Shepard. Specifically, Craddock and Thigpen argue that they were not personally involved in the alleged constitutional deprivations and that no evidence supports imposition of supervisory liability.[21] Doc. #126 at 5–7; Doc. #128

---

[19] In her summary judgment briefing, Shepard raises an unpled claim that her right to due process was violated when she was not given an opportunity to challenge the decision to name her as co-valedictorian with H.B. Doc. #150 at 15–17; Doc. #154 at 30–31; Doc. #175 at 27. The Court will treat her argument regarding this issue as a motion to amend her complaint. *See Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996) (when response to motion for summary judgment asserts new claim, district court should construe response as motion to amend complaint). Because Shepard's summary judgment briefing was filed after the amendment deadline set by the case management order, the motion to amend is governed by the good cause standard of Rule 16(b). *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 734 (5th Cir. 2018). Shepard has failed to show good cause for the amendment. Accordingly, the Court declines to consider the new claim.

[20] Shepard does not refer to her Desktop Publishing course in the amended complaint but raises it for the first time in her responses to the defendants' motions for summary judgment. Doc. #150 at 8; Doc. #154 at 8; Doc. #175 at 8. As with her proposed due process claim, Shepard has failed to show good cause which would justify adding this claim at the current stage of proceedings. The claim is, therefore, not properly before the Court. However, because the defendants anticipated this argument and provided arguments regarding this claim in their memorandum briefs, the Court will, out of an abundance of caution, address the claim. *See* Doc. #128 at 10; Doc. #131 at 20.

[21] They also move for summary judgment based on qualified immunity as to all claims, and with respect to Shepard's request for economic damages. Those matters are addressed below.

at 9–10.

To establish individual § 1983 liability, the plaintiff must show "that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "A Section 1983 claimant must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *Jones v. Lowndes Cty.*, 678 F.3d 344, 349 (5th Cir. 2012) (quotation marks omitted). To establish supervisory liability "for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (emphasis and alterations omitted).

### 1. Assignment of Rank Points

Shepard alleges that Craddock and Thigpen "allowed" others to improperly give H.B. five points for Human A&P and six points for the online Physics course in violation of the Curriculum Guide's policies. Doc. #37 at 4. She also contends that the defendants themselves awarded improper credit for the Human A&P course. Doc. #150 at 22–23; Doc. #175 at 26.

There is no dispute that rank points were improperly assigned or that these improper assignments negatively impacted Shepard. However, there is simply no evidence that either Craddock or Thigpen themselves awarded the credits. To the contrary, the evidence establishes that rank point assignments were handled exclusively by Kemp. Thus, even assuming the assignments rose to the level of a constitutional violation, § 1983 liability against Craddock or Thigpen may exist only to the extent either acted "with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446.

Generally, to establish deliberate indifference, a plaintiff must show that (1) a defendant

"knew of a pattern of constitutional deprivations;" (2) "the abuse was caused by a state actor over whom they had supervisory authority or a state-law created right of legal control;" (3) the "failure to act demonstrated deliberate indifference to the victim's constitutional rights;" and (4) the "failure to act resulted in a constitutional injury." *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013). While a pattern of deprivations is normally required, "deliberate indifference can still be inferred if … the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the alleged … inadequacy." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quotation marks omitted). This single-incident exception to the pattern requirement "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018)

While it seems likely Thigpen (who bore the ultimate responsibility for the accuracy of grade reports) had some level of control over Kemp, there is no evidence that Craddock had supervisory authority or a state-law created right of legal control. Regardless, in the absence of previous complaints of racially motivated grade manipulation (or similar evidence), there is no genuine issue of material fact that either defendant knew of a pattern of constitutional deprivations. Similarly, in the absence of evidence that Kemp, who indisputably was provided the relevant guidelines, was inadequately trained or supervised or was otherwise likely to manipulate grades, there is no genuine issue of material fact that either Craddock or Thigpen knew or should have known a constitutional violation was likely to occur. *Cf. Littell*, 894 F.3d at 629 (single incident exception applied when evidence showed principal provided absolutely no training on Fourth Amendment searches to staff). Accordingly, summary judgment is warranted on the § 1983 claims premised on the assignment of rank points.

Shepard also complains that her constitutional rights were violated by Jones' decision to inform H.B. of online course availability, but not her, and by Jones' placement of her in the desktop publishing course. Doc. #150 at 8, 20; Doc. #175 at 8, 10. However, as with the rank point assignments, Shepard has failed to offer any evidence that Thigpen or Craddock (1) were directly responsible for these acts, so as to warrant direct § 1983 liability; (2) were on notice of similar past violations and acted with deliberate indifference, so as to warrant traditional supervisory liability; or (3) provided no training to Jones on the proper conduct at issue, so as to warrant application of the single incident exception. For these reasons, Shepard's claims premised on Jones' allegedly wrongful conduct must also fail.

*3. Naming of Co-Valedictorians*

Shepard appears to argue not that the decision to name her as co-valedictorian with H.B. was a constitutional violation but rather that the errors in both students' transcripts discussed above, and the failure to provide her the same opportunity as H.B. to take an online course for credit, resulted in an improper tie in the class ranking. *See* Doc. #37 at 4. Because, for the reasons above, Shepard has failed to establish a basis for liability under § 1983 against either individual defendant with respect to these issues, summary judgment is warranted on this issue as well.

**B. Official Capacity Claims and Claims Against School District**

The School District argues it is entitled to summary judgment on all claims because (1) Shepard has not proffered any evidence of discriminatory intent by any School District decision maker; (2) Shepard has not proffered any evidence of a School District policymaker or that a School District policy or custom was the moving force behind any alleged constitutional violation; (3) sharing the valedictorian distinction does not implicate substantive due process issues; and (4)

Shepard does not assert economic damages.[22]  Doc. #131 at 1–2.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Hafer*, 502 U.S. at 25 (quotation marks omitted).  Municipalities and other local government bodies are "persons" within the meaning of § 1983.  *Monell*, 436 U.S. at 688–89.  For a municipality to incur liability under § 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

1. *Rank Points Assigned to H.B.'s Human A&P and Online Physics Courses*

Shepard alleges H.B. was given more rank points than permitted by the Curriculum Guide for online Physics and Human A&P because H.B. is white.  Doc. #37 at 4–5.  She contends the School District is liable for this wrongdoing because the School District "had a policy that arose out of [its] policy of not following the policies in its curriculum guides and student handbooks for awarding quality points and units." Doc. #154 at 15.

The School District argues it is entitled to summary judgment because no School District policymaker had actual or constructive knowledge of a constitutional violation and no School District policy was the moving force behind any alleged constitutional violation.  Doc. #131 at 13. It submits that Kemp, who was not a School District policymaker, placed the rank points in the system. *Id.* at 18.  With respect to the rank points for Human A&P specifically, the School District argues it was the School District's custom and practice to regularly give that course more weight

---

[22] The School District's argument regarding Shepard's economic damages will be addressed below.

than a regular course but students of all races were treated equally in the same grading cycle. *Id.* at 18–19.

a. Identification of policymaker

The identity of the final policymaker is a question of state law. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). "There is no 'de facto' final policymaking authority." *Peterson*, 588 F.3d at 847. The burden of establishing final authority rests with the plaintiff. *Chavez v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664, 679 (5th Cir. 2005).

"Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority …." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "[T]he authority to make municipal policy is necessarily the authority to make *final* policy." *Id.* at 127 (emphasis in original). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* In this sense, a § 1983 inquiry asks "whether governmental officials are final policymakers for the local government *in a particular area, or on a particular issue*." *Brady v. Fort Bend Cty.*, 145 F.3d 691, 699 (5th Cir. 1998). Under this inquiry, to delegate final authority, "[t]he governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). Thus, when responsibility has been delegated subject to constraints, the final policymaker inquiry necessarily depends on the nature of the constraints imposed.

The parties do not dispute that, under Mississippi law, the school board has policymaking

authority over the decisions at issue here.[23]  The only issue is whether the board delegated to Thigpen and Craddock the authority of assigning grade weights, as Shepard argues.

In arguing that the final policymaking authority over the issue of assigning grade weights was delegated to Thigpen and Craddock, Shepard relies on a "MSIS POLICY" issued by the School District, which provides:

> The Cleveland School District will provide timely, accurate and reliable data to the Mississippi Student Information System (MSIS) that is in compliance with the data collection requirements as specified in MS Code 37-37-7.  The superintendent of schools (or his/her designee) shall be responsible for developing and implementing district procedures that follow the guidelines as set forth in the booklet titled "Data Collection Policy and Procedural Guidelines." …
>
> [T]he Auditor's Office will use the following Minimum Standards when auditing schools:
> …
> 9. Policies requiring accurate data
> …
> 11. Procedures to check accuracy of data entered in the school package and MSIS
> 12. Required regular training for appropriate personnel
> 13. Backup paper copies if/when requested
>
> This board directs the superintendent (or his/her designee) to ensure that appropriate procedures as required by the above minimum standards are implemented and maintained by well trained personnel.

---

[23] It is clear the Mississippi legislature vested school boards with final policymaking authority.  *See* Miss. Code § 37-7-301(1) (providing school boards of all school districts shall have power "[t]o prescribe and enforce rules and regulations not inconsistent with law or with the regulations of the State Board of Education for their own government and for the government of the schools …."); § 37-9-14(1) ("It shall be the duty of the superintendent of schools to administer the schools within his district and to implement the decisions of the school board."); § 37-9-14(2)(m) (superintendent shall also have duty to "observe such instructions and regulations as the school board and other public officials may prescribe …."); *see also Floyd-Evans v. Moorehead*, No. 3:14-cv-214, 2016 WL 5374148, *4–5 (S.D. Miss. Sept. 26, 2016) (under Mississippi law, school board, not superintendent, was final decision maker regarding termination decisions for violating school district's policies on sexual relationships with students because Mississippi Code vested school board with power to prescribe and enforce rules generally and with respect to inappropriate teacher/student contact); *Sturgis v. Copiah Cty. Sch. Dist.*, No. 3:10-cv-455, 2011 WL 4351355, at *4 (S.D. Miss. Sept. 15, 2011) ("[T]he school board is the sole policymaker for school districts in Mississippi.").

Doc. #189-8 at 1.[24]  Shepard's argument fails.

The "MSIS POLICY" issued by the School District unambiguously delegates authority to create procedures but only to the extent the policies are consistent with a document titled "Data Collection Policy and Procedural Guidelines."  However, that document is not a part of the record and no evidence of its contents, or the details of its mandates, has been submitted.  Without this document, the Court cannot determine the nature of the constraints on the delegation to Thigpen.  In the absence of such evidence, the Court cannot conclude that Shepard has sustained her burden of establishing a genuine issue of material fact as to whether the School District's school board is the final policymaking authority over the matter of student data entry.

### b.  Official policy

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quotation marks omitted).  When an official policy takes the form of a practice or custom, it must be

> a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.

*Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (quotation marks omitted).  When there is no proof of actual knowledge, a plaintiff may establish constructive knowledge by showing

---

[24] Section 37-37-7(2)(d) of the Mississippi Code provides that the State Auditor has the power to "audit [] the accuracy and validity of all student transactions using the Mississippi Student Information System."

that the policymaker "would have known of the violations if it had properly exercised its responsibilities, as for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). In other words, "[t]o render a city liable actual or constructive knowledge of a 'custom' must be attributable to the governing body or officials to whom that body has delegated policy-making authority." *Webster*, 735 F.2d at 841.

Because Shepard sued a school district, the question is whether the school board, as the School District's governing body, can be charged with actual or constructive knowledge of the alleged custom of inconsistently assigning rank points to grades. *See Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247, 249 (5th Cir. 2003) (considering whether school board had actual or constructive knowledge of custom for purposes of determining school district's § 1983 liability under *Monell* test). To attribute constructive knowledge to the board, Shepard must prove that the inconsistent assignment of rank points to courses was "so persistent and widespread that [it was] the subject of prolonged public discussion or of a high degree of publicity." *See Bennett*, 728 F.2d at 768. There is no evidence the school board had such knowledge.

While Shepard has shown that rank points were routinely assigned inconsistently to Human A&P at Cleveland High during the school year H.B. took that course, she has not pointed to any complaints raised with respect to this issue before the May 2016 graduation ceremony. The earliest notice Shepard has identified regarding an issue with students' GPAs in the School District is the letter her mother sent to Thigpen on May 30, 2016, following the announcement that Shepard and H.B. would share the valedictorian distinction. There is no evidence any student had ever previously expressed concern to any school official regarding the proper assignment of rank points. There is nothing in the record indicating that any School District officials were aware that some

courses were not being assigned the correct number of rank points. Shepard falls short of showing that the inconsistent assignment of rank points was so persistent and widespread that it was the subject of prolonged public discussion or of a high degree of publicity. Shepard thus has failed to show an official policy existed.

c. Moving force

To show that a policy was the moving force behind a constitutional violation, a plaintiff "must show direct causation, i.e., that there was a direct causal link between the policy and the violation." *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018). Shepard does not argue and has not proffered any evidence showing Kemp was following an unwritten policy to ignore the Curriculum Guide in assigning rank points. Kemp's inability to provide an explanation for why she did not follow the Curriculum Guide does not alone establish that a School District policy was the moving force behind her conduct. Thus, Shepard has failed to establish a basis for liability under § 1983 against the School District with respect to the assignment of rank points to H.B.'s courses.

*2. Notice of Online Courses for New Credit*

Shepard does not argue that a policy existed with respect to providing notice of the availability of online courses. Rather, she argues the School District failed to ensure that education was provided to all students on equal terms because "white students at CHS were allowed to take online courses for new credit" while African American students at CHS and at East Side High School were not given that opportunity. Doc. #154 at 24. Specifically, she argues that the School District failed to notify students that the School District offered online courses for new credit and that Jones told H.B. about the courses but did not tell Shepard.[25] *See id.* at 9–10.

---

[25] Shepard also states that Lucille Holmes, the guidance counselor for East Side High, was not aware that online

As mentioned above, a school district's liability under § 1983 must be predicated on "(1) an official policy (2) promulgated by the municipal policymaker (3) [which] was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847. A plaintiff may not rely on a theory of respondeat superior. *Beattie*, 254 F.3d 600 n.2. While Shepard argues generally that Craddock failed to notify students of the online course policy, she does not argue, and has produced no evidence, that this lack of notice was caused by an official school policy. Accordingly, her claim must fail.

### 3. Desktop Publishing Course

Shepard argues that "CSD should not have counted Desktop Publishing twice when calculating Shepard's GPA" and that Jones knew Shepard was repeating the course. Doc. #154 at 8, 10. However, Shepard neither argues, nor has proffered any evidence showing, that her receipt of two grades for the same course was proximately caused by a District policy. *See Peterson*, 588 F.3d at 847. Accordingly, no basis for liability under § 1983 exists against the School District with respect to the duplicate Desktop Publishing grades.

### 4. Naming of Co-Valedictorians

Shepard argues the School District is liable for the alleged wrongdoing "of it[s] final policy makers, Thigpen and Craddock, since the CSD board delegated to them the authority to select valedictorians based on the criteria set forth in CSD's curriculum guides and student handbooks and to formulate CSD's policy on recording data into MSIS and SAMs." Doc. #154 at 18. As discussed above, the Court presumes Shepard argues not that the decision to name her and H.B. as co-valedictorians violated her constitutional rights but that Thigpen and Craddock failed to ensure

---

courses could be taken for new credit but does not explain how this specifically relates to Shepard, who attended Cleveland High. *See* Doc. #154 at 12. She does not name the principal of East Side High or argue that he or she failed to notify Holmes and the students that online courses could be taken for new credit.

the underlying student data was correct.

To the extent Shepard seeks to hold the School District liable for this alleged failure on a respondeat superior theory, her claim fails. *See Beattie*, 254 F.3d at 600 n.2. Because she does not argue and has not proffered any evidence showing that a District policy was the moving force behind this alleged failure, her claim must also fail. *See Peterson*, 588 F.3d at 847. No basis for liability under § 1983 exists against the School District with respect to the naming of Shepard and H.B. as co-valedictorians.[26]

## C. Qualified Immunity

Craddock and Thigpen, in their individual capacities, assert that qualified immunity entitles them to summary judgment on all claims. Doc. #125 at 1; Doc. #127 at 2. Because the Court has determined Shepard has failed to establish a basis for § 1983 liability against these defendants, the assertion of qualified immunity need not be addressed. *See Winn v. Harrison Cty.*, No. 1:07cv1019, 2009 WL 1138017, at *4 (S.D. Miss. Apr. 27, 2009) (denying defense of qualified immunity as moot when granting defendants' motion for summary judgment due to plaintiff's failure to establish defendants' liability under § 1983).

## D. Damages

Craddock and Thigpen argue, in their individual capacities, that they are entitled to summary judgment on Shepard's request for economic damages, stating that Shepard has failed to

---

[26] While Craddock's motion does not specifically address the official capacity claims against him, those claims concern the same issues as the individual capacity claims against him, the official capacity claims against Thigpen, and the claims against the School District. *See* Doc. #37 at 4–5; Doc. #127. "[W]here the Court grants summary judgment in a particular party's favor, it can also grant summary judgment *sua sponte* in favor of another party who is entitled to judgment as a matter of law assuming it is based on the same determinative issues." *Campbell v. City of Indianola*, 117 F. Supp. 3d 854, 876 n.25 (N.D. Miss. 2015) (citation omitted); *see Jensen v. Snellings*, 841 F.2d 600, 618 (5th Cir. 1988) (court may grant summary judgment in favor of non-movant so long as "acts dispositive of [the] issue were presented and argued at length …, and the [other party] had a full and fair opportunity to develop the record").

identify those damages.  Doc. #126 at 11–12; Doc. #128 at 11–12.  The School District argues it is entitled to summary judgment on Shepard's § 1983 claims because she has suffered "no economic damages."  Doc. #131 at 23.  Because the Court has determined Shepard has failed to establish a basis for § 1983 liability against any of the defendants, it need not reach the matter of damages.  *See Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 473 (5th Cir. 1991) (declining to address issue of damages upon concluding defendant was entitled to summary judgment).

**V**
**<u>Conclusion</u>**

Thigpen's motion for summary judgment [125] is **GRANTED**; (2) Craddock's motion for summary judgment [127] is **GRANTED**; and (3) the motion for summary judgment filed by the School District and Thigpen in her official capacity [130] is **GRANTED**.  A final judgment will issue separately.

**SO ORDERED**, this 30th day of September, 2019.

<u>/s/Debra M. Brown</u>
**UNITED STATES DISTRICT JUDGE**